# WARING *v.* UNITED STATES FIDELITY & GUARANTY CO.

---

BONDS; FIDELITY INSURANCE; EVIDENCE; FALSE REPRESENTATIONS.

1. Where, in an action by an employer on a bond given him to insure the fidelity of his employee, the defense of the insurer is based upon the breach of warranties contained in a written statement by the employer, the answers to questions in which the employer expressly agreed should be taken as conditions precedent and as a basis of the bond, such written statement, although torn and mutilated, is admissible in evidence on behalf of the defendant, where its appearance tends to show that the mutilation was accidental, and where the contents of the missing parts were proved by the defendant and admitted by the plaintiff, and where there could have been no motive on the part of the defendant to mutilate the paper.

2. Misrepresentations by an employer to a fidelity insurance company as to the state of the accounts of his employee, the amount of cash the latter had on hand, and the amount of cash that would be put in the hands of such employee, and as to when accountings would be had with him, are material, and, if false, will avoid a policy of insurance issued on the strength of such representations,—especially where the employer agreed that such statements should be taken as conditions precedent and as a basis of the bond.

No. 1407. Submitted May 13, 1904. Decided June 8, 1904.

HEARING on an appeal by the plaintiff from a judgment of the Supreme Court of the District of Columbia entered upon a

verdict directed by the court in an action upon a fidelity insurance bond.                                              *Affirmed.*

The COURT in the opinion stated the case as follows:

This is an appeal from a judgment, entered for the defendant, the United States Fidelity & Guaranty Company, upon a verdict returned by direction of the court, in an action upon a fidelity insurance bond.

Three pleas were filed by the defendant, the first of which was the general issue. Two others denied liability on the ground of material misrepresentations made in the application in compliance with which the bond had been issued.

The bond offered in evidence bears date April 24, 1900, and was issued by the United States Fidelity & Guaranty Company of Baltimore, Maryland, to the plaintiff John L. Waring. It is in the ordinary form, and, in consideration of the sum of $20, and upon the faith of a statement in writing made by said Waring "relative to the duties, responsibilities, and check to be used upon" his agent, Henry Cook, the surety undertook to indemnify said Waring to the amount of $2,500 for the term of one year, commencing April 30, 1900, against "all and any pecuniary loss sustained by the employer of money, securities, or other personal property in the possession of the employee, or for the possession of which he is responsible, by any act of fraud or dishonesty on the part of said employee."

Waring testified that Henry Cook had been his agent for three or four years prior to April, 1900, in the matter of lending money to conductors and motormen of street railways in the city of Washington; that, from time to time, he placed money in Cook's hands to lend in small sums, not to exceed $5 in each case, and to take from the borrowers orders on the paymaster of the railway company to pay the money to said Cook; that Cook was to deduct a commission of 10 per cent from each loan, one half of which was to be retained by him, and the other to be paid to Waring; that payments were to be made the first and middle of each month, and he settled with Cook twice each

month; that Cook would report to him how much money he wanted and how many men had money; that between April 30, 1900, and January 21, 1901, he delivered to Cook for such loans the sum of $1,845.78; that he had no mode of keeping accounts, but "just took a receipt from him for the money I gave him to loan out," which receipt was the only memorandum that he had of the transaction; that these receipts were given and taken up twice per month, the old one being surrendered and a new one given each time. He then offered a receipt executed by Cook on January 21, 1901, for the sum of $7,065.47 placed in his hands to be loaned to the employees of the Metropolitan and other street railroad lines. He said that this was the only evidence held by him against Cook, and included everything, commission and principal, and the money in hand when the bond was given; that on January 21, 1901, he asked Cook for $300, which he said he would raise and bring to him in a day or two; that Cook paid no part of the money intrusted to him since the date of the bond. It was admitted that after January 21 the plaintiff gave the requisite notice to defendant of Cook's default.

On cross-examination, Waring admitted that on April 25, 1900, when he applied for the bond, Cook had in hand "nineteen hundred and some odd dollars" of money that had been delivered to him for the purposes of his agency. He said that he loaned no money to Cook, but advanced the same to him for the transaction of the business of his agency. He produced a memorandum of advances thus made, beginning May 20, 1900, with $501.62, ending January 5, 1901, with $112, and showing the aggregate amount of $1,845.84. He said that Cook would notify him that he wanted a certain amount of money on a certain day and he would meet Cook on the car and give it to him, for which Cook would come to his office a day or two later and give him a receipt; that every time a new receipt was given, the old one was surrendered. When asked how he kept an account of moneys advanced, he replied: "I did not have any accounts; only a receipt in this way;" that he relied entirely upon the memorandum receipt; that the rate of interest charged for the loans made to employees was 20 per cent per month; that the

receipts given by Cook covered both principal and interest. Waring was then asked how Cook made a return, and if he made written statements. His reply was: "He made a verbal statement; he came to me and said, 'I want so much new money to pay certain men.'" He further said that he did not ask Cook for a written statement; that Cook did not give him a list of the names of the men to whom he loaned money; that he did not ask for the names. He said that he examined no accounts, because there were none to examine, either before or after the execution of the bond; that Cook merely told him how much money, and how many men he made loans to, but did not tell the names of the men; that witness never inquired of anyone connected with the railway in order to verify Cook's accounts, because Cook said it was a confidential matter between him and the railway company.

Witness knew that he had intrusted $1,900 to Cook for such loans before the execution of the bond, but could not say when he "commenced stealing the money."

Waring then admitted his signature to what is called the "employer's statement" before the bond was executed. Cook was produced as a witness by plaintiff, and testified that he had loaned no money received from plaintiff between April 30, 1900, and January 24, 1901, to any person. Other questions he declined to answer on the ground that they would tend to incriminate him.

Defendant then proved that on May 16, 1900, the semi-monthly payments to conductors and motormen had been discontinued, and thereafter they had received their wages nightly when they made their trip reports.

Defendant then offered in evidence the written application of Cook, made April 18, 1900, to the surety company, wherein he gave his occupation as conductor on Metropolitan Railway, Washington, and stated his connection with Waring as follows: "Said Waring has placed in my hands moneys to be loaned or invested, under his direction, the bond being given to assure faithful accounting of the funds, but not as security for the loans or investments."

To this was attached three certificates or statements.   The first was signed and sworn to by Cook.   The second was signed by the local agent of the surety company, which, after express-ing confidence in Cook's statements, proceeds thus: "The appli-cant being intrusted with certain sums of money from time to time to be loaned in small amounts, not to exceed $10 to any one man; and he furnishes twice a month a list of those to whom he has made such loans.   The bond is not made to guarantee these loans, but to guarantee that Cook will not use the money for his own purposes."   Then follows this certificate, to which Waring admitted his signature:

"The replies of the applicant herein are, to the best of my knowledge and belief, correct.   He has been in the service of the undersigned employer during the past two years, and has always, to the best of my knowledge, performed his duties faith-fully and satisfactorily, and in accordance with our rules and regulations.   When last examined on the 5th of April, 1900, his accounts were found in every respect correct; he is not to my knowledge, at present, and never has been, in arrears or in default.   I know of nothing in his habits or antecedents affect-ing his title to confidence, and I know of no reason why the bond applied for should not be granted."

The local agent also testified that neither Cook nor Waring had advised him that Cook owed the plaintiff, or that the latter had advanced to Cook the sum of $1,900; and that plaintiff, when the application of Cook was made, told witness that he would receive from Cook a list of the conductors to whom loans would be made, and that such list would be furnished twice a month.   Waring did not contradict this statement, and admitted that he had discussed the character of the business with witness.

Defendant offered in evidence a paper called "employer's statement" made by Waring, April 20, 1900, in response to a notice of the same date from the defendant's president, referring to the application of Cook for the bond, and concluding thus: "The company desires to have answers to the following ques-tions, and the answers will be taken as the basis of the bond if issued."   This statement consisted of a number of printed ques-

tions, with blanks opposite each one for the answer to be written on, and concluded with the following stipulation, immediately under which the signature was written: "It is agreed that the above answers are to be taken as conditions precedent and as the basis of the said bond applied for, or any renewal or continuation of the same that may be issued by the United States Fidelity & Guaranty Company to the undersigned, upon the person above named."

The statement when produced had the lower right-hand corner torn off, and the missing part could not be produced. But few of the answers to the eighteen questions were in part missing. The plaintiff admitted the execution, and had his attention called to the mutilated answers. Defendant introduced evidence tending to show that the paper was unmutilated when received at defendant's office in Baltimore; that it had been kept in a file box containing many other cases; that papers have been frequently torn in handling in crowded boxes, sometimes by rubber bands attached, sometimes by catching in other papers or against the tin backs, and that it had not been mutilated intentionally. Other evidence tended to show that diligent search had been made for the missing part, but without success. Plaintiff objected to the introduction of the mutilated paper, and reserved an exception to its admission.

The answers to the printed questions were admitted by plaintiff to be in his handwriting. So far as material their effect may be thus stated: Cook had been in plaintiff's employ about two years, and was to receive commissions, payable twice a month. The largest amount of cash to be in his custody at any one time, $100 or $200. No deposits were required to be made in banks. Cook will account twice a month for his handling of funds and securities. "Statements" will be the means used to ascertain whether his accounts are correct, and will be examined twice a month. Cook's accounts were last examined April 20, 1900, and then found in every respect correct and proper; securities and funds on hand to balance. There is not now and has not been any shortage due. Cook has never been short; is not

now in debt to plaintiff.    On the case thus made the jury were
instructed to return a verdict for the defendant.

*Mr. B. F. Leighton* for the appellant.

*Messrs. Brandenburg & Brandenburg* for the appellee.

Mr. Justice SHEPARD delivered the opinion of the Court:

1.  The appellant's first assignment of error relates to the ex-
ception taken to the admission in evidence of the mutilated
paper, called the "employer's statement," over the objection
raised thereto by the plaintiff that has been heretofore stated.

The defense to the action rested upon the answers that were
made in writing to the questions propounded in this paper,
which the plaintiff expressly agreed should be taken as "condi-
tions precedent and as the basis of the said bond;" and the argu-
ment on behalf of the appellant is chiefly directed to the ques-
tion of its admissibility.

The conditions of the case do not require us to enter upon the
consideration and discussion of the general doctrine in respect
of the admissibility in evidence of altered and mutilated instru-
ments, when produced and offered by their custodian in support
of his action or defense.

The appearance of the instrument under consideration, which
has been brought up for inspection with the evidence relating
to its preparation and explaining its condition, makes it suffi-
ciently clear that the mutilation was accidental.    Moreover, the
evidence tending to show accidental mutilation is strongly rein-
forced by the two following considerations: In the first place,
no possible motive can be inferred for the spoliation of the in-
strument by the defendant whose interests depended upon it for
conservation; in the second, the contents of the missing part
were not only proved with certainty, but substantially admitted
by the plaintiff also, in his cross-examination.

The employer's statement was rightly admitted in evidence.

2.  The statement, confidence in the representations of which

induced the defendant to issue the bond, having been properly admitted in evidence, the court could do nothing less than instruct the jury to return a verdict for the defendant.

The materiality of some of the representations is obvious, and the evidence is direct and undisputed. It goes without saying that in all branches of insurance there are certain facts and conditions of which information is essential in determining the assumption of the risk, and the rate of premium to be paid therefor. The knowledge of these is largely, and sometimes entirely, confined to the applicant, and the insurer necessarily relies upon the truth of his representations.

In fidelity insurance nothing could be more important or material in determining the assumption of a proposed risk than the knowledge sought to be elicited through the answers required to be made to certain of the questions propounded in this statement.

Notwithstanding this statement in the certificate accompanying Cook's application of April 18, 1900, that the accounts of the latter had been examined and found correct in every respect, and that he was not then, and had not been in arrears or in default, he was called upon for further specific statements on April 20. In response he stated that he had examined Cook's accounts on the day of answering, and that there was then and had been no "shortage." He further answered that he had semimonthly statements from Cook, and accountings with him. Again, he stated positively that the amount of cash that would be in Cook's hands at one time would be $100 or $200.

By his own admissions, Cook had, or ought to have had, $1,900 when these statements were made, and his own account of advances shows that he thereafter delivered to Cook over $500 at one time. From Cook's receipt, which the plaintiff offered in evidence, it appeared that he had over $7,000 in hand on January 21, 1901.

It is true that this represented, not only the principal sums intrusted to Cook for investment, but also the accumulated interest at the rate of 20 per cent per month; yet the principal must,

according to the plaintiff's statement of amounts delivered, have been over $1,800.

It appears also, by his own admissions, that he had no accounting with Cook on either date stated, and that, instead of semi-monthly statements and accounting thereafter, there had been none whatever.

Plaintiff had no knowledge of the particular loans or investments made by Cook during the entire period. His system of taking new receipts from Cook, from time to time, and destroying the old ones, was a travesty of the system of accounts and statements evidently contemplated by the defendant in propounding its questions. In the absence of anything to restrict their meaning, "account" and "statement" must be taken as used in their ordinary sense.

The judgment was right and must be affirmed with costs. It is so ordered.                              *Affirmed.*